UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JONATHAN LYNN HENERY and<br>BEAU EDWARD HANSEN,<br><br>Defendant. | Case No. 1:14-cr-00088-S-BLW<br><br>MEMORANDUM DECISION AND ORDER |

**INTRODUCTION**

The Court has before it defendant Jonathan Lynn Henery's motion to dismiss the indictment. Dkt. 29. Defendants are charged with violating 18 U.S.C. §249(a)(1). Defendant Henery filed this motion arguing that Congress's enactment of §249(a)(1) is unconstitutional. For the following reasons the Court will deny Defendant's motion.

**BACKGROUND**

The government alleges that on October 20, 2013, defendants Henery and Hansen physically attacked an African American man at a club while yelling gang calls and racial slurs. *Gov.'s Resp.* at 3, Dkt. 31. Defendants were charged with willfully causing bodily injury to another because of the victim's perceived race and color in violation of 18 U.S.C. § 249(a)(1). Dkt. 1. Defendant Henery filed this motion to dismiss the indictment, claiming that § 249(1)(a) of the Matthew Shepard and James Byrd, Jr. Hate Crime Act (hereinafter "Shepard-Byrd Act") is unconstitutional because Congress lacked authority

to enact such legislation under enforcement clause of the Thirteenth Amendment to the United States Constitution. *Def.'s Mot.* at 1, Dkt 29. Co-defendant Hansen joined this motion in full. Dkt. 30.

## LEGAL STANDARD

Henery brings a facial challenge to the constitutionality of 18 U.S.C. § 249(a)(1), arguing that its passage overstepped Congress's authority under the Thirteenth Amendment. *Def.'s Br.* at 1-6, Dkt. 29-1. Section 249(a)(1) is distinct from the rest of the Shepard-Byrd Act, in that, it relies solely on Congress's authority under Section 2 of the Thirteenth Amendment. *U.S. v. Cannon*, 750 F.3d 492, 497-98 (5th Cir. 2014). The Thirteenth Amendment to the United States Constitution states that:

> Section 1. Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.
> Section 2. Congress shall have power to enforce this article by appropriate legislation.

In *Jones v. Alfred H. Mayer Co.*, the Supreme Court found that Section 2 of the Thirteenth Amendment "clothed Congress with power to pass all laws necessary and proper for abolishing all badges and incidents of slavery in the United States." 392 U.S. 409, 439 (1968). The Court held that "Congress has the power under the Thirteenth Amendment rationally to determine what are the badges and the incidents of slavery, and the authority to translate that determination into effective legislation." *Id.* at 440. Several circuits, including the Ninth Circuit, have recently applied *Jones* to determine the constitutionality of a statute enacted pursuant to the Thirteenth Amendment, focusing the

inquiry on "whether Congress could have rationally determined that the acts covered by [the statute] impose a badge or incident of servitude on their victims." *U.S. v. Allen*, 341 F.3d 870, 884 (9th Cir. 2003); *U.S. v. Canon*, 750 F.3d at 501 (5th Cir. 2014); *U.S. v. Hatch*, 722 F.3d 1193, 1201 (10th Cir. 2013); *U.S. v. Maybee*, 687 F.3d 1026, 1030 (8th Cir. 2012); U*.S. v. Nelson*, 277 F.3d 164, 186 (2d Cir. 2002).

Henery argues that the Supreme Court's decision in *City of Boerne v. Flores,* 521 U.S. 507(1997), changed the standard set in *Jones*, and the Court should apply the "congruence and proportionality" test articulated therein. *Def.'s Br.* at 7, Dkt. 29-1. In *City of Boerne*, the Supreme Court addressed whether Congress exceeded its authority under the enforcement clause of the Fourteenth Amendment in enacting the Religious Freedom Restoration Act of 1993. 521 U.S. 507. However, Congress's powers under the Thirteenth Amendment are distinct from those enumerated in the Fourteenth Amendment.

First, the Thirteenth Amendment applies to purely private conduct. "Congress's powers under the Thirteenth Amendment are not limited by any analogue to the State Action Doctrine that was early deemed to restrict the Fourteenth Amendment." *Nelson*, 277 F.3d at 175. Additionally, as reasoned in *City of Boerne,* the enforcement clause of the Fourteenth Amendment gave Congress the power to enact legislation that "deters or remedies constitutional violations." 521 U.S. at 518. The purpose of the congruence and proportionality test is to draw the line between measures that are remedial in nature and those that impermissibly decree the substance of the Fourteenth Amendment, *Id.* at 519.

The framework is not applicable to the Thirteenth Amendment analysis, where Congress has been given the power "to determine what are the badges and the incidents of slavery, and the authority to translate that determination into effective legislation." *Jones*, 392 U.S at 440.

A finding that Fourteenth Amendment analysis is inapplicable also comports with Ninth Circuit precedent. *See Phiffer v. Proud Parrot Motor Hotel, Inc.*, 648 F.2d 548, 551-52 (9th Cir. 1980) (finding the standards of the equal protection analysis do not apply to a statute passed pursuant to the Thirteenth Amenment). The Court holds that the test articulated in *Jones* is the applicable standard when analyzing a constitutional challenge under the Thirteenth Amendment. The question before the Court is whether Congress could have rationally determined that racially motivated violence covered by § 249(a)(1) imposes a badge or incident of servitude on their victims. The Court finds that it could.

## ANALYSIS

Relevant here, 18 U.S.C. § 249(a)(1) provides that:

> Offenses involving actual or perceived race, color, religion, or national origin.--Whoever, whether or not acting under color of law, willfully causes bodily injury to any person or, through the use of fire, a firearm, a dangerous weapon, or an explosive or incendiary device, attempts to cause bodily injury to any person, because of the actual or perceived race, color, religion, or national origin of any person--(A) shall be imprisoned not more than 10 years, fined in accordance with this title, or both.

In enacting § 249(a)(1), Congress made the explicit findings that § 249(a)(1) fell well within Congress's power under the Thirteenth Amendment:

> For generations, the institutions of slavery and involuntary servitude were enforced, both prior to and after the adoption of the 13th amendment to the Constitution of the United States, through widespread public and private violence directed at persons because of their race, color, or ancestry, or perceived race, color, or ancestry." Congress then found that federal law prohibiting racially motivated violence would be an appropriate exercise of their power under the Thirteenth Amendment: "eliminating racially motivated violence is an important means of eliminating, to the extent possible, the badges, incidents, and relics of slavery and involuntary servitude."

Shepard-Byrd Act, PL 111-84, October 28, 2009, 123 Stat. 2190, § 4702(7).

Henery argues that Congress has failed to rationally show how racially motivated violence imposes a badge or incident of slavery, especially in light of the Supreme Court's recent decision in *Shelby County v. Holder*, 133 S.Ct. 2612 (2013). *Def.'s Br.* at 8-9, Dkt. 29-1; *Def.'s Reply* at 3-8, Dkt. 39. Henery additionally argues that § 249(a)(1) impermissibly infringes on states' rights and violates the ban on double jeopardy. *Def. Br.* at 9, Dkt. 29-1. The Court will address each of these arguments in turn.

### I. Badge or Incident of Slavery

As discussed at great length by the Fifth Circuit in *Cannon*, the phrase "badge or incidents of slavery" has most recently been interpreted broadly by the Supreme Court. 722 F.3d at 498-500. In *Jones*, the Supreme Court held that Section 2 of the Thirteenth Amendment gave Congress the power to prohibit all public and private racial discrimination in the sale and rental of property. 392 U.S. at 439. The Court in *Jones* made clear that Section 2 of the Thirteenth Amendment gave Congress broad power "rationally to determine what are the badges and the incidents of slavery, and the authority to translate that determination into effective legislation." *Id.* at 440. This broad

power was reiterated in *Griffin v. Brechenridge*, where the Supreme Court held that Congress was within its Thirteenth Amendment powers to pass the Ku Klux Klan Act. 403 U.S. 88, 105 (1971). "Not only may Congress impose such liability, but the varieties of private conduct that it may make criminally punishable or civilly remediable extend far beyond the actual imposition of slavery or involuntary servitude." *Id.*

Under this standard, prohibitions against racially motivated violence have consistently been found to be within Congress's power under the Thirteenth Amendment. *See, e.g., Allen*, 341 F.3d at 870; *Cannon*, 750 F.3d 492; *Hatch*, 722 F.3d 1193; *Maybee*, 687 F.3d 1026; *Nelson*, 277 F.3d 164. In fact, two circuits have addressed the exact issue before the Court, both finding that Congress could have rationally determined that racially motivated violence covered by § 249(a)(1) imposes a badge or incident of servitude on their victims. *Cannon*, 750 F.3d at 502; *Hatch*, 722 F.3d at 1206.

Henery argues that the interpretation of the Thirteenth Amendment under *Jones* is impermissibly broad because "Congress's powers are only limited by Congress." *Def.'s Reply* at 7, Dkt. 39. The Tenth Circuit in *Hatch* addressed this argument, finding that "[a]lthough 'badges and incidents of slavery' could be interpreted as giving Congress authority to legislate regarding nearly every social ill… [section 249(a)(1)] does not take such an approach." 722 F.3d at 1205. The Tenth Circuit found that Congress met the *Jones* rationality test by focusing section 249(a)(1) on three considerations: "(1) the salient characteristic of the victim, (2) the state of mind of the person subjecting the victim to some prohibited conduct, and (3) the prohibited conduct itself." *Id.*

First, the court in *Hatch* found that § 249(a)(1) is limited to "racial violence" where "race" is defined as it was in 1860. *Id.* at 1205-06 (citing Shepard-Byrd Act at § 4702(8); *Saint Francis College v. Al–Khazraji,* 481 U.S. 604, 613 (1987) (noting that Congress of the 1860s and '70s often used "race" to refer to distinctions we would likely now think of as matters of national origin or religion rather than race)). This finding is supported by Supreme Court precedent holding that the Thirteenth Amendment was not limited to protecting African Americans, but extended to prohibit discrimination based on race. *Bailey v. Alabama*, 219 U.S. 219, 240-241 (1911) ("While the immediate concern was with African Slavery, the [Thirteenth] Amendment was not limited to that. It was a charter of universal civil freedom for all persons, of whatever race, color, or estate, under the flag.").

Second, the court in *Hatch* found that Congress further confined the statute's reach by limiting to "those who act '*because of* the victim's actual or perceived race.'" 722 F.3d at 1206. This reasoning comports with Ninth Circuit precedent interpreting the Thirteenth Amendment. In *Allen*, the Ninth Circuit held that Congress validly enacted section 249(b)(2)(B) of the Shepard-Byrd Act under its Commerce Clause powers and Thirteenth Amendment powers. 341 F.3d 883-84. The Ninth Circuit found that 249(b)(2)(B) falls comfortably within Congress's Thirteenth Amendment power because it requires that "victims be harmed *because of* their race or religion and *because of* their use of a public facility." *Id.* (citing *Nelson*, 277 F.3d at 185-86).

Third, the court in *Hatch* found that the prohibited conduct—racially motivated violence—could rationally be considered a badge or incident of slavery. 722 F.3d at 1206. Violence is "one of slavery's most necessary features." *Id.* (citing *State v. Mann*, 13 N.C. (2 Dev.) 263, 1829 WL 252, at *203; *Nelson*, 277 F.3d at 189 ("slavery in general…centrally involves the master's constant power to use private violence against the slave"); *Neal v. Farmer,* 9 Ga 555, 1851 WL 1474 at *8 (stating that being "liable to beating ... and every species of chastisement" were "incidents of slavery")). Therefore, "Congress could conceive that modern racially motivated violence communicates to the victim that he or she must remain in a subservient position, unworthy of the decency afforded to other races." *Hatch*, 722 F.3d at 1206. In *Cannon*, the Fifth Circuit adopted this same reasoning. 750 F.3d at 502.

The Court agrees with the findings in *Hatch* and *Cannon*, and likewise holds that Congress could reasonably conclude that racially motivated violence prohibited by § 249(a)(1) was a badge or incident of slavery.

I.  **Applicability of Shelby County**

Henery argues that *Shelby County* calls into question the reasoning of *Jones* and its progeny. *Def.'s Reply* at 3-5, Dkt. 39. In *Shelby County*, the Supreme Court overturned § 5 of the Voting Act, finding Congress had exceeded its powers under the Fifteenth Amendment. 133 S.Ct. at 2627. In particular, the Supreme Court found that Congress could not rely on "decades-old data and eradicated practices to justify the requirement" because § 5 "imposed current burdens, and must be justified by current needs." *Id.* at

2622, 2627. Henery argues that the same analysis applies here. "'Given the almost identical language in the Thirteenth and Fifteenth Amendments, *Shelby County's* admonition might apply [to challenges under the Thirteenth Amendment.].'" *Def.'s Reply* at 4-5, Dkt. 39 (quoting *Cannon*, 750 F.3d at 510 (Elrod J. concurring)).

Henery cites significantly to Judge Elrod's concurrence, (*Def.'s Reply* at 3-7, Dkt. 39), where it is suggested that the rationale behind § 249(a)(1) may fail under *Shelby County* because "Congress focused on past conditions and did not make any findings that current state laws, or the individuals charged with enforcing them, were failing to adequately protect victims from racially-motivated crimes." *Cannon*, 750 F.3d at 510-511 (Elrod J. concurring). However, the majority in *Cannon* rejected this argument, finding that *Shelby County* was not controlling in cases challenging statutes enacted under the Thirteenth Amendment. *Id.* at 505. The Fifth Circuit found that even if *Shelby County* had changed the landscape regarding Reconstruction Amendments, absent a clear directive from the Supreme Court, lower courts are bound to follow controlling precedent. *Id.* (citing *Rodriguez de Quijas v. Shearson/ Am. Express, Inc.,* 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving this Court the prerogative of overruling its own decisions.")). Like the Court of Appeals, the Court is bound by controlling Supreme Court precedent unless it has been expressly overruled. Therefore, the Court

agrees with the Fifth Circuit that *Jones* is controlling and, under *Jones*, enacting § 249(a)(1) was a valid exercise of Congress's power under the Thirteenth Amendment.

## II. Federalism Concerns

Henery also argues that the enactment of §249(a)(1) could not be a valid exercise of Congress's Thirteenth Amendment powers because it encroaches on states' authority to enforce criminal laws and the ban on double jeopardy. *Def.'s Br.* at 9, Dkt. 29-1. The Court disagrees.

States retain a significant measure of sovereign authority but "only to the extent that the Constitution has not divested them of their original powers and transferred those powers to the Federal Government." *Garcia v. San Antonio Met. Transit Auth.*, 469 U.S. 528, 549 (1985). When Congress passed the Thirteenth Amendment and delegated Congress power to enforce it, the states can no longer reserve exclusive power over it. U.S. v. Beebe 807 F.Supp.2d 1045, 1057 (D.N.M. 2011). As explained by the Fourth Circuit, "[f]ederal laws criminalizing conduct within traditional areas of state law, whether the states criminalize the same conduct or decline to criminalize it, are of course commonplace under the dual-sovereign concept and involve no infringement per se of states' sovereignty in the administration of their criminal laws." *United States v. Johnson*, 114 F.3d 476, 481 (4th Cir.1997).

Additionally, double jeopardy is not implicated. It is generally understood that "an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each." *U.S. v. Zone*, 403 F.3d 1101,

1104 (9th Cir. 2005). While acting within the parameters of the Thirteenth Amendment, Congress has not infringed on states' sovereign authority or violated the ban on double jeopardy. Congress's enactment of § 249(a)(1) was a valid exercise of its Thirteenth Amendment power, and is, therefore, constitutional.

## ORDER

**IT IS ORDERED:**

1. Defendant's Motion to Dismiss the Indictment (Dkt. 29) is **DENIED**.

DATED: October 13, 2014

B. Lynn Winmill
Chief Judge
United States District Court